*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0751**

State of Minnesota,
Appellant,

vs.

Larry Lawayne Hewitt,
Respondent.

**Filed September 8, 2015
Reversed and remanded
Johnson, Judge**

Nicollet County District Court
File No. 52-CR-14-396

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michelle M. Zehnder Fischer, Nicollet County Attorney, James P. Dunn, Chief Deputy County Attorney, St. Peter, Minnesota (for appellant)

Silas L. Danielson, Jeffrey A. Grace, Blethen, Gage & Krause, PLLP, Mankato, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**JOHNSON**, Judge

Larry Lawayne Hewitt is charged with driving while impaired. He moved to suppress evidence and dismiss the charge on the ground that deputy sheriffs did not have

the reasonable, articulable suspicion necessary to temporarily detain him to investigate an anonymous tip that he had been driving while impaired. The district court granted Hewitt's motion but on a different ground that was not urged by Hewitt, namely, that deputy sheriffs entered his property without a warrant. In this pretrial appeal, the state argues that the district court erred because the state did not have notice of the issue on which the district court decided the motion and, thus, did not have an opportunity to present evidence and argument to the district court on that issue. We agree and, therefore, reverse and remand for further proceedings.

## FACTS

On September 6, 2014, at approximately 1:05 p.m., an anonymous tipster reported to the Nicollet County Sheriff's Department that "Larry Hewitt may be driving drunk over by Hewitt Roll-a-Dock." Deputy Sheriff Daniel Kanuch went to the premises and observed a pick-up truck parked inside a large metal building that was under construction. Deputy Sheriff Michael O'Gorman arrived one minute later and observed Deputy Kanuch speaking with Hewitt, who was sitting in the driver's seat of the truck. Both deputies observed indicia of intoxication and suspected Hewitt of committing the offense of being in physical control of a vehicle while under the influence of alcohol. Deputy Kanuch arrested Hewitt and transported him to the sheriff's office. Hewitt submitted to a breath test, which revealed an alcohol concentration of .17.

The state charged Hewitt with two counts of third-degree driving while impaired (DWI) and two counts of fourth-degree DWI. *See* Minn. Stat. §§ 169A.20, subds. 1(1), 1(5), 169A.26, subd. 1, 169A.27, subd. 1 (2014). In April 2015, Hewitt moved to

suppress evidence and to dismiss the complaint. He served and filed a memorandum of law in support of the motion, in which he argued that the anonymous tip did not provide the officers with a reasonable, articulable suspicion of criminal activity so as to justify the investigative detention. At the hearing on the motion, counsel for the parties jointly offered the police reports into evidence and agreed that there was no need for testimony. Counsel for both parties presented oral argument.

During Hewitt's attorney's argument, the district court asked whether Hewitt was arguing that the deputies violated the Fourth Amendment by entering his property without a warrant. Hewitt's attorney provided a brief, equivocal answer and then continued to argue that the deputies did not have a reasonable, articulable suspicion of criminal activity. Three days after the hearing, the state submitted a memorandum of law in opposition to Hewitt's motion in which it argued that, contrary to Hewitt's arguments, the officers had a reasonable, articulable suspicion of criminal activity. Ten days later, Hewitt submitted a reply memorandum of law in which he essentially reiterated his earlier arguments. Four days later, the district court issued an order in which it granted Hewitt's motion to suppress on the ground that "[t]he deputies' warrantless entry into the building where they made contact with Defendant was improper." In light of its suppression ruling, the district court dismissed the charge for lack of probable cause. The state appeals.

## DECISION

The state argues that the district court erred by granting Hewitt's motion, for two reasons. First, the state argues that the district court erred by granting Hewitt's motion to suppress on an issue that was not argued in Hewitt's motion papers and was not argued by Hewitt's attorney at the hearing on the motion. The state does not argue that it is improper for a district court to grant relief to a moving party on a basis that never was raised or argued by the moving party. Rather, the state contends that it was deprived of fair notice and an opportunity to present evidence and argument on the issue that the district court deemed to be decisive because Hewitt did not make the argument and because the district court did not inform the state that the issue would be considered and decided. Second, the state argues that the district court erred by concluding that the officers' warrantless entry violated the Fourth Amendment without considering whether Hewitt had a reasonable expectation of privacy based on the particular facts of this case, including the fact that the investigative detention apparently occurred on commercial property.[1]

---

[1]If the state appeals from a pre-trial order, "the state must clearly and unequivocally show . . . that the trial court's order will have a critical impact on the state's ability to prosecute the defendant successfully." *State v. Barrett*, 694 N.W.2d 783, 787 (Minn. 2005) (quotations omitted). Hewitt concedes that the district court's suppression order would have a critical impact on the state's prosecution. Hewitt contends, however, that the state may not appeal from the district court's pre-trial order because the district court dismissed the complaint for lack of probable cause based on a factual determination. Hewitt relies on a rule that precludes the state from appealing from a district court's pre-trial ruling "if the [district] court dismissed a complaint for lack of probable cause premised solely on a factual determination." Minn. R. Crim. P. 28.04, subd. 1(1). But the district court did not dismiss the complaint *solely* because of a factual determination; rather, the district court's determination that there is no probable

4

For its first argument, the state relies on *State v. Needham*, 488 N.W.2d 294 (Minn. 1992). In that case, the defendant sought to suppress certain pre-trial statements on the ground that they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). *Needham*, 488 N.W.2d at 295. At the omnibus hearing, the defendant introduced evidence that was intended to prove that he did not agree to talk to a police officer without an attorney. *Id.* at 296. The parties simultaneously filed post-hearing memoranda of law. *Id.* at 296. In the defendant's memorandum, he argued, for the first time, that the state failed to carry its burden of proving by a preponderance of the evidence that the investigating officer's *Miranda* warning was a proper warning. *Id.* The district court granted the defendant's motion on that issue. *Id.* On the state's pre-trial appeal, the supreme court reversed the district court's suppression ruling on the ground that "it was not clear to the prosecutor that the defense was contending that the warning admittedly given defendant was inadequate or incomplete." *Id.* The supreme court reasoned that "the focus of the omnibus hearing was on other issues relating to the taking of the confession" and that "[i]t was not until the prosecutor received the defendant's omnibus hearing brief, filed simultaneously with the state's brief, that the prosecutor could know that the defense was making an issue of the adequacy of the warning given defendant." *Id.* Accordingly, the supreme court concluded that "a reopening of the

cause is based on its legal conclusion that law-enforcement officers violated the Fourth Amendment in obtaining the evidence that Hewitt sought to suppress. If a dismissal for lack of probable cause is based on a legal conclusion contained in the same order, the state is not precluded from bringing a pre-trial appeal. *See State v. Dunson*, 770 N.W.2d 546, 549 (Minn. App. 2009), *review denied* (Minn. Oct. 20, 2009). Thus, the state may pursue this pre-trial appeal of the district court's order.

omnibus hearing is justified in order to give the state a full and fair opportunity to meet its burden" on the adequacy of the *Miranda* warning. *Id.* at 296-97.

Hewitt argues that this case is distinguishable from *Needham*. He contends that the state had notice of the issue on which the district court decided the motion. More specifically, he contends that the state was put on notice of the decisive issue by statements made at the hearing on his motion. Before inquiring into the record, we note that there is a clear distinction between the sole issue raised by Hewitt's motion papers before the hearing and the issue that caused the district court to grant his motion. Hewitt made only one argument in his initial memorandum of law: that the information provided by the anonymous tip was lacking in reliability and specificity such that it did not allow the officers to form a reasonable, articulable suspicion that Hewitt had committed the offense of DWI. The district court, however, resolved the motion by deciding that the officers violated the Fourth Amendment by entering Hewitt's property without a warrant. The state plainly could not have anticipated the district court's ruling based only on the motion papers that Hewitt served and filed before the hearing. The question is whether the state received notice of the warrantless-entry issue after Hewitt served and filed his motion.

Hewitt contends that the state received notice of the warrantless-entry issue at the hearing on his motion. Hewitt's contention is focused on the following exchange between the district court and his attorney:

> COURT: .... They can walk up to him, if his
> pickup is in a public place or a place accessible to the

6

public. But what about entering a private building which he's -- it's his building?

MR. DANIELSON: It is. Yeah.

THE COURT: Can they do that? . . . . Are you going to argue that? Because that's where my concern comes up. I tend to agree with [the prosecutor]. If he's stopped on the road, they can walk up to him without probable cause. They can walk up to anyone in a public area. And if they detect the odor of alcohol, and he's in physical control, that's one thing. But to walk into a building that's owned by him, without a warrant --

MR. DANIELSON: Well, yeah. And, I guess -- yeah. I'm not here to disagree with you, obviously. But I didn't even think they had the right to come into his presence. Because the only reason that they came there was because of these reports. And if the reports provide no basis, at all, for any kind of suspicion of criminal activity, they would never have been there at all. And to just say somebody is drunk, when you haven't said, well, I saw them driving around, they almost hit the building or this or that. That, to me, is not enough for them to even be . . . there.

This excerpt demonstrates that the district court raised an issue concerning the officers' warrantless entry and specifically asked Hewitt's attorney, "Are you going to argue that?" Hewitt's attorney did not take the opportunity to pursue the issue identified by the district court by adopting it as an argument made on behalf of Hewitt. In fact, the transcript reveals that Hewitt's attorney quickly transitioned back to his original argument that the anonymous tipster had not provided the officers with enough information to allow them to form a reasonable, articulable suspicion that Hewitt had engaged in criminal activity. After this exchange, it was reasonable for the prosecutor to

believe that Hewitt was *not* expanding his argument for suppression beyond the one issue that was argued in Hewitt's initial memorandum of law. Thus, the colloquy between the district court and Hewitt's attorney did not put the state on notice that the district court would consider the officers' warrantless entry to be a basis for granting Hewitt's motion.

Because the state did not have notice of the warrantless-entry issue, the state did not have "a full and fair opportunity to meet its burden" on the question whether the officers' warrantless entry violated the Fourth Amendment. *See id.* at 296-97. For that reason, "a reopening of the omnibus hearing is justified." *See id*. Having resolved the state's first argument in its favor, we need not consider the state's second argument.

In sum, we reverse the district court's order suppressing evidence and dismissing the charge, and we remand the matter to the district court for further proceedings.

**Reversed and remanded.**